## McCARTER v. LOUISVILLE & NASHVILLE R. CO.

Court of Appeals of Kentucky.

Feb. 23, 1951.

934

G. E. Reams, Harlan, James W. Smith, Middlesboro, for appellant.

H. L. Bryant, Pineville, C. S. Landrum, C. E. Rice, Jr., Lexington, for appellee.

SIMS, Justice.

O. H. McCarter sued the Louisville & N. R. Company to recover $2,950 for personal injuries and damages to his truck which was struck by a train of appellee at a private crossing in Bell County not far from Middlesboro. At the conclusion of appellant's evidence the court sustained appellee's motion for a directed verdict. While the record does not show the reason given by the trial judge, it is apparent his ruling was based upon appellant's contributory negligence.

Appellant owned and was driving a large Reo tractor-truck attached to a trailer in which he was hauling 14 tons of coal. He was coming from the tipple of the Premier Coal Company and the road he was traveling was straight and was about ten feet from the railroad tracks. The truck and trailer were of such length as to make it necessary for appellant to pull out and make practically a 90 degree turn to go over the crossing. Both the railroad tracks and the road were straight and parallel to each other for a distance of 475 or 480 feet from this crossing towards the tipple. In the other direction from the crossing, the railroad was straight for 600 or 700 feet. There was nothing to obstruct appellant's view of the train when he looked into his rear view mirror while traveling the road from the tipple to the crossing, or to obstruct his view of the train as he turned to drive onto the crossing.

The accident happened about 12:30 p. m., on Feb. 10, 1948, which was a clear day. Appellant testified he was driving slowly, looked in his rear view mirror several times, saw the rairoad tracks but did not see the train which was approaching from his rear. The train consisted of a boxcar, caboose, tender and engine, with the engine pushing the caboose and boxcar, the latter being the first car in the train. The proof for appellant is to the effect that the train was traveling 25 or 30 miles an hour and gave no signal for the crossing, which was used by 600 to 1,200 people in the course of 24 hours. Just as it struck the truck, or immediately thereafter, the train sounded the distress signal consisting of two blasts of the whistle and ringing the bell.

Appellant further testified he was driving from 3 to 5 miles per hour as he went on the crossing and could have stopped "immediately, in a foot or two". It took him 8 or 10 seconds to make the turn onto the crossing. He turned left onto the crossing, had the glass in the left door of the cab of his truck rolled all the way down and he looked both to his left and to his right as he drove onto the crossing and did not see the train. When his front wheels were about the middle of the track the boxcar of the train hit the left door

of the truck and this was the first time he saw the train.

When asked to explain why he did not see the approaching train, appellant answered: "Well, for the reason as I came down the track I looked in both directions and there was no train coming either direction; I got upon the track, I glanced in the rear view mirror several times as I approached the crossing and I was going approximately three to five miles an hour, and just as I started across the crossing and got the front wheels on the track the train hit me, but it never made any sound or blew a whistle or rang the bell, and it was only a matter of a few seconds from the time, at the rate of speed it was going, from the time it came in view until it was at the crossing."

We lift this from appellant's testimony:

"Q. And you looked out for the train and never did see it? A. No, sir; didn't see it.

"Q. Can you account why you didn't see it? A. It was going too fast, it didn't make any sound or give any warning.

"Q. Sounding a warning wouldn't have prevented you from seeing it? A. At the rate of speed it was coming it came within a few seconds.

"Q. You could see the train in a second? A. If I had time, but I didn't have time to see it."

No reasonable man can give any credence to appellant's testimony that he was looking in his rear view mirror driving along the highway which paralleled the railroad tracks for 475 or 480 feet and saw the tracks but did not see the train approaching behind him; or that he looked both ways as he drove on the crossing and failed to see the train. Had appellant looked in his rear view mirror while traveling the road parallel to the tracks, or had he looked as he drove onto the crossing, it would have been impossible for him not to have seen the train. The fact that the train hit the front of the truck is indisputable proof that it must have been close upon him and in plain sight as he turned to drive on the crossing. As we said in Nashville C. St. L. Ry. Co. v. Stagner, 305 Ky. 717, 205 S.W.2d 493, 495, "Where the facts make it certain that a traveler could have seen or heard an approaching train in time to avert a collision had he looked and listened properly, he will not be heard to say that he looked for but did not see, or listened for and did not hear the train." Also see Tarter v. Wigginston's Adm'x, 310 Ky. 393, 220 S.W.2d 829.

Even when it is not the sole cause of an injury, contributory negligence is a complete defense. Contributory negligence need not be the proximate cause of the accident and resulting injury, it is sufficient if it contributes thereto so that but for same the accident would not have occurred. Contributory negligence is usually a question for the jury but where there is no contrariety in the facts and they show plaintiff was guilty of such negligence and the injuries would not have occurred otherwise, then there is nothing to submit to the jury. Where but one conclusion can be drawn from the uncontradicted evidence by fair-minded men, then the question of contributory negligence is one of law for the court. Norfolk & W. Ry. Co. v. Bailey, 307 Ky. 386, 211 S.W.2d 154.

Admitting arguendo that appellant's proof established it was the custom of appellee to give warning signals as its trains approached this crossing, Illinois Cent. Ry. Co. v. Applegate's Adm'x, 268 Ky. 458, 105 S.W.2d 153, or that the use of the crossing was such as to require a lookout and the giving of the warning signals, Louisville & I. R. Co. v. Morgan, 174 Ky. 633, 192 S.W. 672, and that it failed in such duties, yet appellant's own testimony shows beyond cavil that he was guilty of contributory negligence as a matter of law, and the trial judge correctly directed the jury to find for appellee at the conclusion of appellant's evidence. Nashville C. & St. L. Ry. Co. v. Stagner, 305 Ky. 717, 205 S.W.2d 493.

The judgment is affirmed.